[Civ. No. 15196.   Second Dist., Div. Three.   Sept. 18, 1946.]

JOE R. LOPEZ, Respondent, v. HENRY MACIAS, Appellant.

Joe Wapner for Appellant.

Victor A. Gillespie and Paul E. Tapley for Respondent.

SHINN, J.—Defendant Henry Macias gave plaintiff Joe R. Lopez his promissory note for $2,000. The note not having been paid, Lopez brought this action and recovered judgment for the principal amount and interest, and attorney's fees of $400; also for $152, money loaned to defendant. Defendant's answer admitted the execution of the note, but pleaded that it had been settled through a later transaction, which is described in the answer as follows: That in January, 1941, plaintiff Lopez gave his promissory note for $4,000 to one Salud Savilla, and that in April, 1944, an agreement was entered into between plaintiff and defendant, with the consent and approval of said Savilla, that plaintiff would deliver to said Savilla a pick-up truck, would also deliver to defendant herein a receipt in full for all sums due plaintiff from defendant, and that in return defendant would deliver to plaintiff as fully paid the $4,000 note, theretofore given to Savilla. Defendant also filed a cross-complaint, in which he alleged the execution of the $4,000 note to Savilla, that it had been assigned to him, had not been paid, and he prayed for judgment on the note in the sum of $4,000, interest and attorney's fees. Plaintiff's answer to the cross-complaint denied that he had executed the alleged note for $4,000. The court found in favor of plaintiff and cross-defendant upon all of the issues raised by the complaint and answer and the cross-complaint and answer thereto. The

court therefore found that the alleged $4,000 note had not been executed and that no agreement had been made between plaintiff and defendant for surrender by defendant to plaintiff of the $2,000 note. A reversal of the judgment is sought upon the ground that the evidence was insufficient to justify the findings.

The execution of the $2,000 note having been admitted, and the defense of payment having consisted only of the alleged agreement which we have mentioned, we assume that the court was principally concerned with the transactions between the parties which were alleged to have led to the settlement. Salud Savilla testified through an interpreter. He was questioned concerning the alleged $4,000 note and the consideration for which it was given. He testified that he gave Lopez $200 in 1940; that he later gave him $300; that in the same year he gave him "about $400 or $300," he did not remember which; that he "kept on giving him as he asked for more," and that he gave Lopez $750 in 1941; that this made up a total of $4,000 and that Lopez gave him a note in January, 1941, in the presence of one Perez; that all the sums were given to Lopez in cash; that he, Savilla, had no bank account, and sometimes money was given to Lopez in the presence of other persons; that money was given to him in cash from a box in which he kept it; that he had not worked for a number of years and had last worked in 1937, hauling fertilizer, at which he made about $100 a week. He further testified that on or about the 14th of April, 1944, Lopez came to his house and asked him for the note, saying that Salud should give it to him, "that he had already arranged with my boy Macias" and that he gave him the note, although Lopez never paid him the $4,000. He testified that Perez was present at the time. The witness did not attempt to state when any further sums were advanced to Lopez and apparently had kept no account of any sums advanced. No explanation was made as to why he should have been loaning money to Lopez.

As corroboration of the testimony of Macias, defendant called one Albert as a witness, who testified that he was a gambler, a bookmaker, and in 1940 was associated in business with plaintiff Lopez; that in the fall of 1940 he went to the Macias home with Lopez, where he met Savilla, and that he saw Savilla give Lopez some money, but he did not know the amount. Another witness, Matthews, called by defendant, testified that Lopez had stated to him at one time that he owed

Macias' "father" more than Macias owed him; that he thought Lopez said he owed around $3,500, something like $4,000. The witness Perez testified that he had known Lopez to get money from Savilla four different times; that on April 14, 1944, he was at Savilla's house when Lopez came and told Savilla that Macias had sent him for the note and that Savilla then walked into his room and came out and handed a paper to Lopez, but that he did not know what was on the paper. He further testified that he had been at the Savilla house at the request of Lopez and that Savilla had given him, Perez, a sealed envelope with money in it, but that he did not open the envelope. Macias testified that he had borrowed money from Lopez; that in April, 1944, he had had a talk with Lopez about the money that he owed Lopez and that Lopez admitted owing his, Macias', "dad" $4,000, for which he had given him a note; that the same evening he called Lopez on the phone, asked Lopez to sign a release of any claims against Macias and said, "I will have to take care of my father as soon as I get around to that, and you can sign the release for me and I will be down there and get it." In this connection is was stipulated by counsel that Macias at that time acknowledged an indebtedness to Lopez in the amount of approximately $3,700, and that Macias was making the claim that Lopez agreed to cancel the indebtedness of $3,700 and to give Savilla a pick-up truck if Macias would procure the surrender of the $4,000 note held by Savilla. Macias testified that he had seen such a note early in January, 1941; that the note was on a printed form and that he had seen it on several later occasions; that Macias later presented a release to Lopez to sign but he declined to sign it. His explanation of his borrowing $2,000 from Lopez was that they had gone to Savilla about it and Savilla told Lopez it was all right to loan Macias up to $4,000; that Lopez asked Macias how he was going to repay the money and he said, "Well, I am not going to pay you until you have paid my father, and he says, 'Well, that is all right.' " Seven hundred and fifty dollars, he said, was loaned by Savilla to Lopez in 1940 with which to purchase an automobile. Macias testified that on or about April 17, 1944, he had a conversation with Lopez in the office of Mr. Tapley, one of Lopez' attorneys; that at that time he told Tapley, in the presence of Lopez, that Lopez owed his father $4,000, for which Lopez had given his note; that Tapley asked Lopez about it and Lopez said that he didn't know what Macias was talking about but that it had all been straightened up with Macias about the note.

Lopez testified that he had been doing some bookmaking in 1940 and that he had loaned Macias $2,000 from a safe deposit box which he kept in connection with that business. He testified that he did not borrow any money from Salud Savilla in 1938, 1939, 1940, 1941, or at any other time, and did not at any time execute a note of $4,000 in his favor, that Savilla never advanced any money to him for the purchase of an automobile and that he believed he registered his car in Savilla's name but was not sure; that he had a discussion with Macias in April, 1944, at his home concerning money, but he denied having had a conversation with Macias about the pick-up truck or the return of a $4,000 note to him. He denied having seen Perez in 1944, except in the month of February. It appeared from the testimony of the witness that he had paid for a Pontiac car, a receipt had been given in the name of Savilla, and that when he, Lopez, was sued and the car attached, Savilla made a third party claim for it. Later he testified that he wished to put the car in Macias' name, but, after discussing it, arranged to put it in the name of Savilla. He denied having received from Savilla any part of the $750 which was paid for the car. He testified that Macias came to him in April, 1944, and asked him to sign a release in favor of Macias; that Macias then offered to pay him $200 and that he refused to sign it; that there was no conversation about any indebtedness to Savilla, nor any mention made of a $4,000 note, and that the first time he ever heard of such a note was when his attorney, Mr. Tapley, told him that Macias claimed such a note was in existence. He testified that he had never received any money from Perez nor sent Perez to Savilla for money; that when Macias presented the release to him for his signature, he asked Macias how much money he had in the bank and Macias replied, "$18,000"; that he had never gone to Savilla's house to ask return of a $4,000 note nor had he ever made any statement to the witness Matthews concerning such a note; that he had never been to Savilla's house with Albert and that Savilla never handed him any money in the presence of Albert; that he never had any discussion with Macias as to any money he, Lopez, was supposed to owe Savilla; that in Mr. Tapley's office on April 17 nothing was said about a $4,000 note owed to Savilla; that Mr. Tapley told him it was Macias' lawyer who claimed that he, Lopez, had given Savilla the $4,000 note. Mr. Tapley testified that a conversation was held in his office on April 17, 1944, after the institution of the present action,

between Lopez, Macias, and himself; that nothing was said concerning $4,000 or a $4,000 note owing to Savilla, nor was there any discussion of Savilla at that time; that the conversation was with reference to a settlement of the suit on the $2,000 note.

The foregoing statement of the evidence has been derived from a reading of the transcript, and if anyone should chance to read this opinion he will have learned before reaching this point, that the evidence was sufficient to justify the findings in favor of plaintiff and cross-defendant.

From a consideration of the extent of the services of plaintiff's attorneys in the litigation, we are of the opinion that the award of $400 as attorneys' fees was not excessive.

The judgment is affirmed. The attempted appeal from the order denying a new trial is dismissed.

Desmond, P. J., and Wood, J., concurred.

A petition for a rehearing was denied October 9, 1946, and appellant's petition for a hearing by the Supreme Court was denied November 14, 1946.